*Ralph Rotondo, Michael Addeo*, for defendant.

WILLIAM WEINTRAUB *et al. vs.* ACCO MFG. CO., INC.

SAME *vs.* SAME.

JULY 17, 1952.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

BAKER, J.  The first of the above cases is an action of assumpsit for breach of a written agreement.  In the superior court it was tried to a jury which returned a verdict for the defendant.  Without filing a motion for a new trial plaintiffs duly prosecuted their bill of exceptions to this court.

Thereafter under the provisions of general laws 1938, chapter 535, §6, plaintiffs within one year after verdict filed in this court their petition, with an affidavit attached thereto, for leave to file in the superior court a motion for a new trial on the ground of newly discovered evidence. Such petition and also plaintiffs' exceptions in the other case are now before us and were argued together.  We shall first consider the exceptions.  These are eight in number but only two, the seventh and eighth, are being pressed.  The remaining exceptions being neither briefed nor argued are deemed to be waived.

It appears in evidence that plaintiffs are wholesale dealers in jewelry in New York City and that defendant, a Rhode Island corporation, manufactures jewelry in Central Falls in this state.  On April 8, 1947 the parties entered into a written agreement whereby plaintiffs were to be the exclu-

sive sales agents for defendant's products in the state of New York, in several nearby states, and in the District of Columbia. The agreement was to be in force for one year and contained a provision for an automatic renewal for another year unless terminated by the affirmative act of either party within a fixed time before the end of the first year. No such termination took place and the agreement was renewed for the second year. It was also provided therein, among other things, that plaintiffs should devote all their time and energy in diligently and faithfully serving the defendant by selling in the specified territory the articles of jewelry which it manufactured; that they should keep accurate accounts of all orders and transactions; and that they should forward to defendant a weekly statement of business done and orders received.

Under the agreement plaintiffs were to be paid a commission of 10 per cent on all orders received by defendant from the territory in question including house accounts so called. These were accounts of customers who purchased directly from defendant without solicitation by plaintiffs. The agreement further provided that, in the event of any breach by plaintiffs, defendant "may determine this agreement without notice" to plaintiffs. Except with permission the latter were not to carry any line of merchandise to compete with defendant's products.

In April 1948 the parties agreed that plaintiffs' commissions on orders received from P. M. Jewelry Creations, Inc., hereinafter referred to as P.M., a house account, would thereafter be 7½ per cent instead of 10 per cent, provided the yearly business done with that account exceeded $50,000. On September 10 defendant wrote plaintiffs that it could not depend solely on certain house accounts and suggested that plaintiffs go out on the road to get business. Finally on November 23, 1948 defendant sent plaintiffs a letter by registered mail advising them that the agreement was terminated because of their violation of certain paragraphs therein. However, there was testimony on behalf

of plaintiffs that their attorneys promptly took care of this matter; that plaintiffs were informed by defendant to forget about the termination notice; and that in fact the parties continued to do business under the agreement until it expired, according to its terms, in April 1949. On the other hand there was testimony for defendant that the agreement was terminated when the above notice was given and that thereafter there was an oral understanding that plaintiffs would receive from defendant a commission on such orders as they could "pick up."

The plaintiffs' claim for unpaid commissions amounting to $1191.81 is apparently based entirely on goods shipped by defendant on the P.M. house account. The amount of the claim is not disputed by defendant whose attorney made the following statement during the trial of the case: "I think we can agree as to the accounts, the PM account. We agree if there was anything coming to the plaintiffs, the amount is $1191.00. Now, there isn't any dispute as to the amount, if the plaintiffs are entitled to recover. It is either $1191.00 or nothing. There is no issue insofar as that part is concerned."

In support of their claim plaintiffs contend in substance that regardless of whether or not they carried out their part of the agreement to the letter the defendant in effect waived or overlooked any breaches thereof by accepting plaintiffs' services and continuing to operate under the agreement, certainly up to November 23, 1948 when the above notice was given, and even after that date until the agreement expired in April 1949 according to its provisions. As evidence that the agreement was considered by the parties to be in force at all times, plaintiffs refer to the general conduct of the litigants and also to certain correspondence between them subsequent to November 23, 1948 relating to the figuring of commissions due thereafter, to defendant's refusal to permit plaintiffs to carry another line of jewelry, and to the fact that on February 3, 1949

plaintiffs advised defendant that they were terminating the agreement as of April 7, 1949.

Broadly speaking defendant contends that in accordance with the agreement and the subsequent oral understanding plaintiffs were paid commissions on all orders which they personally obtained and also on all house account orders received prior to November 23, 1948 when the written agreement allegedly was terminated, and that plaintiffs now are not entitled to obtain commissions on orders received from P.M. after the above date and up to April 7, 1949. The defendant also argues that the evidence shows that plaintiffs did not discharge their obligations under the agreement but were content to merely accept commissions from the house accounts.

The seventh exception is to the refusal of the trial justice to charge the jury in accordance with the following requests submitted by plaintiffs:

"1. If defendant accepted plaintiffs' services after the letter of November 23, 1948, plaintiffs are entitled to recover the amount of $1191.81.

2. If, after November 23, 1948, plaintiffs and defendant continued to operate under the contract, plaintiffs are entitled to recover the amount of $1191.81.

3. Plaintiffs are entitled to commission at $7\frac{1}{2}\%$ on all goods shipped by defendant to PM Jewelry Creations, Inc. to November 23, 1948 less the amount already paid plaintiffs on said shipments, regardless of how plaintiffs performed the contract.

4. No matter how plaintiffs performed the contract they are entitled to all commissions earned on all goods shipped by defendant to PM Jewelry Creations, Inc. to November 23, 1948."

The eighth exception is to those parts of the charge of the trial justice to the jury wherein he repeated several times in substance and without qualification that plaintiffs to recover must prove that they carried out their part of the agreement.

We have examined the charge of the trial justice in its relation to the exceptions pressed and to the questions of

law and fact raised by the evidence in this case. In our opinion the charge did not adequately point out to the jury the problems presented nor instruct them as to how such problems might be solved depending upon the view taken of the conflicting evidence. Considering the circumstances appearing herein it is our judgment that the trial justice should have charged the jury in accordance with plaintiffs' second request as specified in the seventh exception, and that his failure to do so was error. That request clearly raised the question whether the parties continued to operate under the agreement after November 23, 1948 when the alleged termination notice was given by the defendant. That was an important question the answer to which could well depend on reasonable inferences drawn by the jury from the conduct of the parties and the conflicting evidence.

The defendant argues that the above request was substantially covered by the trial justice in his charge when he said: "You will consider whether there was an actual breaking of the contract, a rescission of the contract, and consider the relations of the parties after that time. What took place after that? You will consider all those things as throwing any light upon the relationship between the parties—the keeping of the office in New York, the acceptance of orders and the permitting them to go out and take orders. Consider all the elements in the case." We cannot agree with defendant's above argument. In our opinion the charge thus relied on was vague and clearly lacked a definite relation to the point in question contained in plaintiffs' request. The charge as given directed the jury's general attention to the relationship of the parties after November 23, 1948, but failed to inform them what the effect of their findings on that matter would be and how it should affect their verdict. To this extent the seventh exception is sustained.

In support of its eighth exception plaintiffs point out certain portions of the charge claimed by them to be erroneous. We recognize that in passing upon such an exception

the charge as a whole must be considered. However, it is our opinion that when so viewed this charge required the jury to find that plaintiffs had performed all their obligations under the agreement before it could find in their favor. That thought was emphasized by being repeated several times by the trial justice. The following language is an example of such repetition: "The plaintiffs must prove two things. They must prove that they carried out that part of the contract by them agreed to be carried out. They must further prove that the defendant failed to carry out its part of the contract. There is the issue. * * * Did the plaintiffs carry out their terms of the contract? They must show you that they have first of all performed their part of the contract to sell the goods, and that they have not been paid for it. If they have, they are entitled to a verdict. If they have not, the defendant is entitled to your verdict."

It is our judgment that in so charging without further explanation the trial justice limited too narrowly plaintiffs' rights in the circumstances. Ordinarily they would be called upon to show that they had performed their obligations under the agreement before they could recover for any alleged breaches by defendant. Here, however, the issues were raised by the evidence as to whether this agreement, which contained a termination clause for the benefit of defendant, was actually continued in force until April 1949, and whether by conduct and by continuing to do business with plaintiffs defendant had waived or excused any breaches in performance which the former might have made, thereby causing that point to become immaterial. See 3 C.J.S. Agency, §188, p. 90. *Armfield* v. *McClure, Inc.,* 77 R. I. 390. The charge as given did not cover these matters satisfactorily. Under it the jury's verdict could have been based on a finding that plaintiffs did not fully perform all their obligations set out in the agreement, even though the jury might have found that defendant continued to do business with plaintiffs under that instrument up to

its expiration in April 1949 and that defendant inferentially had waived any breach by them. The eighth exception is sustained.

In view of our conclusion as to the seventh and eighth exceptions which requires a new trial, it is unnecessary for us to consider the miscellaneous petition, William Weintraub et al. v. Acco Mfg. Co., M. P. No. 997, wherein petitioner also seeks a new trial on newly discovered evidence.

The plaintiffs' seventh exception to the extent indicated herein and their eighth exception are sustained, the other exceptions are overruled, and the case is remitted to the superior court for a new trial.

*Semonòff & Semonoff, Ralph P. Semonoff,* for plaintiffs.
*Joseph Mainelli,* for defendant.